IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CT-3245-D

ANTHONY WRIGHT, )
 )
        Plaintiff, )
 )
v. ) **ORDER**
 )
KENNETH LASSITER, et al., )
 )
        Defendants. )
 )

Anthony Wright ("Wright"), a state inmate proceeding pro se, filed this action under 42 U.S.C. § 1983, alleging violations of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. [D.E. 1]. On July 9, 2014, the court reviewed Wright's complaint under 28 U.S.C. § 1915A and allowed the action to proceed [D.E. 9]. On October 20, 2014, all defendants answered the complaint [D.E. 26]. On October 23, 2014, Magistrate Judge Robert B. Jones, Jr. issued a scheduling order, which set a motions deadline of December 23, 2014 [D.E. 27]. On February 10, 2015, Wright filed a motion for an audit of Department of Public Safety ("DPS") chaplains [D.E. 34]. On April 16, 2015, Wright filed a motion for a preliminary injunction [D.E. 41]. On April 23, 2015, defendants moved for summary judgment [D.E. 42]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Wright about the motion, the consequences of failing to respond, and the response deadline [D.E. 47]. On May 11, 2015, Wright responded in opposition to the motion for summary judgment [D.E. 49]. As explained below, the court grants defendants' motion for summary judgment and denies Wright's motions.

I.

Wright is incarcerated at Central Prison. Compl. [D.E. 1] 2. Wright describes himself as a "Tradition Rastafarian." Compl. 4. "NCDPS maintains a list of 'recognized' religions (also referred to as 'faith groups') in the North Carolina Prisons Religious Practices Resource Guide and Reference Manual ('the Manual') . . . . The Rastafarian faith group is a recognized faith group and is specifically referenced and discussed in the Manual." Stratton Aff. [D.E. 44] ¶¶ 10–11; see Joyner Aff. [D.E. 43] ¶ 8; Brown Aff. [D.E. 45] ¶¶ 9, 13 & Ex. B (Rastafarian policy). The Manual lists specific accommodations for the Rastafarian faith group. Joyner Aff. ¶ 8. These accommodations "include allowances for diet, dress, and hair" along with "[n]umerous religious property items . . . including the King James Bible (or Schofield Holy Bible), a medallion, a flag, a shell or bead, and a head covering" and weekly corporate worship. Stratton Aff. ¶ 11; see Brown Aff., Ex. B [D.E. 45] 23–24. Additionally, "[a]ll inmates are allowed to worship privately as long as prison rules are not violated." Speer Aff. [D.E. 46] ¶ 12; see Stratton Aff. ¶ 8; Brown Aff. ¶ 6 & Ex. A [D.E. 45] 16. The Manual also includes four Rastafarian holy days as an "authorized practice." Brown Aff., Ex. B [D.E. 45] 23, 26. However, the DPS Religious Practices "Committee, based upon its research and consultation with authoritative resources on the Rastafarian faith, determined that official celebrations on any holy days are not a commonly recognized practice, ritual, or necessary core tenant of the Rastafarian faith." Stratton Aff. ¶ 15; see Brown Aff. ¶ 16.

Rastafarian inmates "are free to celebrate holy days . . . in accordance with prison rules" during their weekly worship services,[1] and Wright is an approved faith helper at Central Prison for

---

[1] The brochure Wright provided indicates that "[t]he Holy days are to pray and ask for penance." Compl., Exs. [D.E. 1-1] 4. Of the seven holidays listed in the brochure, five call for a prayer service, and three of those five call for a celebration with music and food following the prayer service. Id. 4–5.

2

the Rastafarian faith. Stratton Aff. ¶ 19; see Speer Aff. ¶ 12; Brown Aff. ¶ 20. Wright has made numerous unsuccessful requests to prison staff and officials for recognition and accommodation of various religious holidays. Compl. 4–5 & Exs. [D.E. 1-1] 4–5; see [D.E. 7]; Joyner Aff. ¶ 3 & Ex. A [D.E. 43] 6, 9; Stratton Aff. ¶ 6; Speer Aff. [D.E. 46] ¶ 7. Wright's requests were "based upon the particular sect of the Rastafarian faith that [Wright] was exposed to while incarcerated in New York." Speer Aff. ¶ 8; Joyner Aff., Ex. A [D.E. 43] 6 (grievance); Stratton Aff. ¶ 6; Brown Aff. ¶ 18 & Ex. C [D.E. 45] 28 (inmate request for religious assistance form). "Central Prison has approximately 94 declared members of the Rastafarian faith group." Stratton Aff. ¶ 6. Before Wright's "arrival at Central Prison, no members of the Rastafarian faith group . . . made requests or demands similar to the demands and requests made by Plaintiff." Speer Aff. ¶ 8; see Stratton Aff. ¶ 6.

"NCDPS has a Policy entitled 'Religious Services' which sets forth the procedure and practice at NCDPS for recognizing religions at facilities and determining accommodations for faith groups." Joyner Aff. ¶ 6; see Brown Aff., Ex. A (Religious Services policy). Wright initially submitted his requests to prison officials at Central, including defendants Joyner, McCullough, Lassiter, and Vines using the prison grievance system. Compl. 4; Joyner Aff. ¶ 3. However, because Wright's requests for accommodation were not already recognized by the DPS Religious Services policy or manual, Wright had to submit his request to the DPS Religious Practices Committee rather than to Central Prison officials. Compl. 4; Joyner Aff. ¶ 7; Speer Aff. ¶ 6; Stratton Aff. ¶ 13; Brown Aff. ¶¶ 10–11.

On August 23, 2012, Wright submitted a request for religious assistance to defendant Speer, who forwarded the request to defendant Brown and DPS's Religious Practices Committee. Compl. 4 & Exs. [D.E. 1-1] 2–3; Brown Aff. ¶¶ 11, 14, 16 & Ex. C; Speer Aff. ¶¶ 7, 11. Defendant Brown,

3

"with the aid of the Religious Practices Committee, reviewed and researched [Wright]'s requests." Brown Aff. ¶ 16. Brown and the committee concluded "that the holy days that [Wright] is requesting to be recognized are not essential to the general practice of Rastafarianism." Id. ¶¶ 17–18. Thus, Brown and the committee denied Wright's requests, and informed Wright of the basis for the denial. Id. ¶ 19. However, Brown "never gave a name of authoritative resources on the Rastafarian faith they consulted" to Wright in denying his requests. Resp. Opp'n Defs.' Mot. Summ. J. [D.E. 49] 2.

Defendants Stratton and Speer also "attempted to explain the Committee's decision to" Wright and to address his concerns. Stratton Aff. ¶ 18; Speer Aff. ¶ 11. Stratton and Speer have ordered Rastafarian educational materials in response to Wright's requests. Stratton Aff. ¶ 20 & Ex. A; Speer Aff. ¶ 13. In 2014, defendant Stratton sought and received approval for Rastafarian inmates at Central Prison to have a holy day on August 17, 2014. Stratton Aff. ¶ 21 & Ex. B. Wright "complained about the extent of the celebration that was allowed" because "individuals who are not members of the Rastafarian faith [were not] allowed to attend" and because "the facility did not provide food for the celebration." Stratton Aff. ¶ 21.

## II.

First, the court addresses Wright's motions for an audit and a preliminary injunction [D.E. 34, 41]. Wright's motion for an audit lacks merit and is untimely. See, e.g., Sager v. Standard Ins. Co., No. 5:08–CV–628–D, 2010 WL 2772433, at *1 (E.D.N.C. July 12, 2010) (unpublished). Thus, the court denies the motion.

As for Wright's motion for a preliminary injunction, Wright seeks the removal of defendant Stratton during the pendency of this litigation. [D.E. 41] 1. A court may grant a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips

4

in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In Winter, the Supreme Court rejected the "standard that allowed the plaintiff to demonstrate only a possibility of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotations omitted), vacated on other grounds, 559 U.S. 1089, reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Wright has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, Wright has failed to meet his burden of proof. Accordingly, the court denies the motion.

Next, the court addresses defendants' motion for summary judgment. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249–50. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

5

RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005); see Holt v. Hobbs, 135 S. Ct. 853, 859–60 (2015); Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009); Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006).

Under RLUIPA, the inmate initially must show that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt, 135 S. Ct. at 862. The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Holt, 135 S. Ct. at 860; Smith, 578 F.3d at 251. A substantial burden places "substantial pressure on an adherent to modify his behavior and to violate his beliefs" or "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." Lovelace, 472 F.3d at 187 (alterations and quotations omitted). The court may "not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental

6

interest." Smith, 578 F.3d at 250; see Holt, 135 S. Ct. at 863. "RLUIPA adopts a . . . strict scrutiny standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (alteration in original) (quotation omitted). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); see Smith, 578 F.3d at 252. "Security concerns deserve particular sensitivity." Smith, 578 F.3d at 252 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190) (alteration in original) (citation omitted); see Holt, 135 S. Ct. at 866.

As for Wright's section 1983 claim, the Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. The Free Exercise Clause of the First Amendment protects inmates from unreasonable policies and regulations that are "designed to suppress religious beliefs or practices" or that unreasonably "impose a substantial burden on a prisoner's right to practice his religion." Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014) (quotation omitted). Under the Free Exercise Clause, "a prisoner has a clearly established . . . right to a diet consistent with his . . . religious scruples." Lovelace, 472 F.3d at 198–99 (alterations in original) (quotation omitted). A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated. For First Amendment purposes, "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Thus, "a prison regulation [that]

7

impinges on [an inmate's] constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Moreover, courts "must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." Lovelace, 472 F.3d at 199. Only intentional and unjustified denials of sincerely held personal practices that are rooted in the plaintiff's religious beliefs will justify relief under the Free Exercise Clause. See, e.g., id. at 198–99.

Under the First Amendment, an inmate must demonstrate that a prison policy or regulation substantially burdens the exercise of his religion. See, e.g., Lovelace, 472 F.3d at 198 n.8; Brown v. Ray, 695 F. Supp. 2d 292, 300 (W.D. Va. 2010). If an inmate shows a substantial burden, the court must then examine four factors to determine whether the policy is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89–91.[2]

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (alteration omitted) (citations and quotations omitted); see Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001).

Wright has failed to demonstrate that defendants have placed a substantial burden on his religious beliefs. "The prison must permit a reasonable opportunity for an inmate to engage in religious activities but need not provide unlimited opportunities." Van Wyhe v. Reisch, 581 F.3d

---

[2] Because the Free Exercise analysis relies on a "reasonableness" test, "RLUIPA provides more protection to inmates' free exercise rights than does the First Amendment." Al-Amin v. Shear, 325 F. App'x 190, 194 n.3 (4th Cir. 2009) (per curiam) (unpublished); see Lovelace, 472 F.3d at 186, 198–200.

639, 657 (8th Cir. 2009). Wright can engage in weekly corporate worship, which may include celebration of holy days as part of a worship service. Wright may possess items relating to his faith, including items of religious study. Wright can pray and worship privately in his cell. Although Wright would prefer that defendants offer him further religious opportunities, he has failed to demonstrate that defendants have forced him "to modify his behavior and to violate his beliefs" or "to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." Lovelace, 472 F.3d at 187 (quotation and alterations omitted); see Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 834 (8th Cir. 2009); Winder v. Maynard, 2 F. Supp. 3d 709, 715 (D. Md.), aff'd, 583 F. App'x 286 (4th Cir. 2014) (per curiam) (unpublished); Jihad v. Fabian, No. CIV. 09-1604 SRN LIB, 2011 WL 1641885, at *16 (D. Minn. Feb. 17, 2011) (unpublished), report and recommendation adopted, 2011 WL 1641767 (D. Minn. May 2, 2011) (unpublished). Although "the protection of RLUIPA, no less than the guarantee of the Free Exercise Clause, is not limited to beliefs which are shared by all of the members of a religious sect," Holt, 135 S. Ct. at 862–63 (quotation omitted), offering religious opportunities designed to accommodate the greatest number of adherents "maximizes inmates' religious liberty while addressing compelling government interests including security problems, staffing limitations, and space constraints." Jones v. Shabazz, 352 F. App'x 910, 915 (5th Cir. 2009) (per curiam) (unpublished); see Chance v. Tex. Dep't of Criminal Justice, 730 F.3d 404, 415–16 (5th Cir. 2013); Harbin v. S. C. Dep't of Corr., No. 6:13-CV-01973-JMC, 2014 WL 4955200, at *11 (D.S.C. Sept. 30, 2014) (unpublished), appeal filed, No. 15-6555 (4th Cir. 2015). Wright's citation to "big meals" the prison hosts "every year on Thanksgiving and Christmas," Resp. Opp'n Defs.' Mot. Summ. J. 1–2, does not alter this conclusion. See Banks v. Beard, No. 3:CV-10-1480, 2013 WL 5465165, at *12–13 (M.D. Pa. Sept. 30, 2013) (unpublished) (Christmas is an "institution-wide

9

holiday meal" rather than a religious celebration), aff'd sub nom. Banks v. Sec'y Pa. Dep't of Corr., No. 13-4081, 2015 WL 509515 (3d Cir. Feb. 9, 2015) (per curiam) (unpublished).

Because Wright has not demonstrated a substantial burden, both his RLUIPA and First Amendment claims fail. See Chance, 730 F.3d at 415 n.10; Gardner v. Riska, 444 F. App'x 353, 355–56 (11th Cir. 2011) (per curiam) (unpublished); Van Wyhe, 581 F.3d at 657–58; Lovelace, 472 F.3d at 199–200; Harbin, 2014 WL 4955200, at *13, Winder, 2 F. Supp. 3d at 715 n.1.

III.

In sum, the court DENIES Wright's motions for an audit and a preliminary injunction [D.E. 34, 41], and GRANTS defendants' motion for summary judgment [D.E. 42]. The clerk shall close the case.

SO ORDERED. This 10 day of June 2015.

JAMES C. DEVER III
Chief United States District Judge